Filed 12/15/20  P. v. Vailes CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. MURREL WAYNE VAILES III, Defendant and Appellant. | D076125 (Super. Ct. No. SCD270590) |

APPEAL from a judgment of the Superior Court of San Diego County, Steven E. Stone, Judge.  Affirmed as modified.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Julie L. Garland, Assistant Attorneys General, Eric A. Swenson and Allison V. Acosta, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Murrel Wayne Vailes III of robbery (Pen. Code,[1] § 211; counts 1, 2, 5 and 6) assault with a semiautomatic firearm (§ 245, subd. (b); counts 3 and 4), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 7), and possession of firearm following a juvenile adjudication (§ 29820; count 8). As to counts 1, 2 and 6, the jury found Vailes was a principal armed with a firearm (§ 12022, subd. (a)(1)), that as to counts 3 and 4 he personally used a firearm (§ 12022.5, subd. (a)), and as to count 5, he personally and intentionally used a firearm (§ 12022.53, subd. (b)). In a bifurcated proceeding, the trial court found true allegations that as to each count Vailes committed all of the offenses while released from custody on bail (§ 12022.1, subd. (b)) and that he had suffered three prior strike convictions within the meaning of the "Three Strikes" law as well as one prior serious felony conviction (§§ 667, subd. (a)(1), (b)-(i), 1170.12, 1192.7, subd. (c)).

In June 2019, the court sentenced Vailes to a determinate prison term of 18 years plus an indeterminate term of life in prison with no parole eligibility for 129 years. Specifically, on count 1 it imposed 25 years to life plus a one-year firearm enhancement, five years for the serious felony conviction, and two years for the on-bail enhancement; 25 years to life plus a one-year firearm use enhancement on count 2; 27 years to life plus a four-year firearm use enhancement on each of counts 3 and 4; and 25 years to life plus a one-year firearm use enhancement on count 6. The court stayed under section 654 the punishment for the remaining counts and enhancements. It awarded Vailes four days of presentence custody credit (§ 2900.5).

On appeal, Vailes contends his statutory exclusion from early parole consideration due to his Three Strikes sentence (see § 3051, subd. (h)) as applied to him denies him equal protection of the law. He contends that if we

---

[1]     Undesignated statutory references are to the Penal Code.

reject his equal protection challenge, his de facto life without the possibility of parole (LWOP) sentence is cruel and/or unusual in violation of the Eighth Amendment of the United States Constitution and Article I, section 17 of the California Constitution. Vailes further contends that if his defense counsel forfeited the latter argument, he received prejudicially ineffective assistance of counsel, warranting remand for resentencing. Vailes finally argues the abstract of judgment must be corrected to reflect the trial court's section 654 stay of his count 7 sentence.

The People concede the latter point and we agree the abstract of judgment must be corrected. The People maintain Vailes forfeited the first two contentions by failing to raise them below, but in any event his recidivist sentence is not constitutionally infirm under either theory Vailes advances. We reject Vailes's constitutional challenges and as modified, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

In January 2017, Vailes committed several robberies, two of them at gunpoint and two accompanied by another perpetrator. Given the nature of his appellate claims, we need only briefly summarize the facts of the offenses.

*Counts 1 and 2*

On January 12, 2017, two men took a wallet, cell phones and money from A.H. and his wife after purporting to be prospective purchasers of a phone A.H. was selling. One of the men waved a black semiautomatic handgun at A.H., whose young children were with him and his wife at the time. A.H. was unable to see the men's faces clearly.

Police reviewed records of the online platform on which the sales transactions were to occur and found Vailes's accounts for them, in which he used a pseudonym.

3

*Counts 3, 4, 5, 7 and 8*

The next day, Vailes robbed J.A. and J.A.'s then-girlfriend J.K. at gunpoint, taking a pair of shoes J.A. was selling and a jacket.

J.A. and J.K. later spoke with family members about the incident, leading them to find images of Vailes on social media. J.K. befriended Vailes on Snapchat, where she and J.A. saw a photograph and video of Vailes holding the same gun used in the robbery and wearing the jacket and shoes he took from J.A.

*Count 6*

Two days later, Vailes snatched a cell phone, box and duffle bag from A.P. while A.P. was showing the phone to him for purposes of sale. A.P. chased after Vailes but stopped when another man with a gun jumped in front of him and pointed it at A.P.'s chest.

*Post Arrest Conduct and* Romero *Motion*

Following Vailes's arrest, an investigator listened in on over 1,000 phone calls Vailes made to family and friends. Two hours after his arrest, Vailes took part in a call regarding deleting his Facebook page. Vailes discussed deleting various photographs and using code words about purchasing an extended magazine for a firearm. Based on some of the phone calls, the investigator became concerned that Vailes was arranging to retaliate against the victims in this case.

During his sentencing hearing Vailes's counsel moved to strike Vailes's prior convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*), pointing out they were committed when he was under 18 years old, and the court could still impose a lengthy sentence if all strikes were stricken. Counsel argued such relief was warranted because Vailes had never received adequate treatment for his intellectual disability and behavior

4

issues. Counsel sought a sentence that would allow Vailes to earn the ability to get out of custody, observing Vailes did not fire shots, there was no evidence the guns were loaded, and it was unclear in two instances whether Vailes used a gun.

The prosecutor pointed out that in jail calls Vailes had used code words to discuss firearms and gave green lights from custody in retaliation for a shooting. He argued Vailes's crimes were "extremely premeditated" and not spur-of-the-moment, but took place over several days in anticipation of using force and violence against multiple victims. The prosecutor pointed out Vailes's Facebook page showed he was a leader in the crimes and that he had been convicted of three prior robberies, so he knew the consequences but made a deliberate decision to commit more robberies with a gun. The prosecutor argued that Vailes had opportunities and warning, but "every time he escalates with violent behavior" and the only mitigation for him was his date of birth.

The court denied the motion and declined to strike any strikes "in light of the nature and circumstances of this case and [Vailes's] background." The court ruled imposition of the Three Strikes sentence was just and warranted, pointing out Vailes had committed 10 separate robberies before the current offenses, which he committed while on bail pending sentencing for his 2016 offenses. It found Vailes's current crimes were "well-planned, well-reasoned sophisticated crimes," as he found victims through the internet, created fake accounts, and lured the victims to a location to more easily rob them. The court found its sentence was "necessary to protect society, punish the defendant, deter others from criminal conduct by demonstrating consequences, and to prevent the defendant [from] committing new crime."

DISCUSSION

I. *Equal Protection Claim*

A. *Section 3051 and Application*

In 2014, the Legislature enacted laws, including section 3051, that provide a parole eligibility mechanism for juvenile offenders. (*People v. Franklin* (2016) 63 Cal.4th 261, 277.)[2] "[S]ection 3051 . . . requires the Board [of Parole Hearings] to conduct a 'youth offender parole hearing' during the 15th, 20th, or 25th year of a juvenile offender's incarceration. [Citation.] The date of the hearing depends on the offender's '[c]ontrolling offense,' which is defined as 'the offense or enhancement for which any sentencing court imposed the longest term of imprisonment.' [Citation.] A juvenile offender whose controlling offense carries a term of 25 years to life or greater is 'eligible for release on parole by the board during his or her 25th year of incarceration at a youth offender parole hearing, unless previously released or entitled to an earlier parole consideration hearing pursuant to other statutory provisions.' [Citation.] The statute excludes several categories of juvenile offenders from eligibility for a youth offender parole hearing: those who are sentenced under the Three Strikes law [citation] or Jessica's Law

---

[2]    In passing these laws, the Legislature explained that " 'youthfulness both lessens a juvenile's moral culpability and enhances the prospect that, as a youth matures into an adult and neurological development occurs, these individuals can become contributing members of society.' [Citation.] Thus, the bill's purpose was 'to establish a parole eligibility mechanism that provides a person serving a sentence for crimes that he or she committed as a juvenile the opportunity to obtain release when he or she has shown that he or she has been rehabilitated and gained maturity.' [Citation.] [¶] To this end, section 3051 provides that an offender who committed a 'controlling offense' as a youth is entitled to a 'youth offender parole hearing' after a fixed period of years set by statute." (*In re Jenson* (2018) 24 Cal.App.5th 266, 276-277.)

6

[citation], those who are sentenced to life without parole, and those who commit another crime 'subsequent to attaining 23 years of age . . . for which malice aforethought is a necessary element of the crime or for which the individual is sentenced to life in prison.' " (*Franklin*, at pp. 277-278.)

"Section 3051 thus reflects the Legislature's judgment that 25 years is the maximum amount of time that a juvenile offender may serve before becoming eligible for parole. Apart from the categories of offenders expressly excluded by the statute, section 3051 provides all juvenile offenders with a parole hearing during or before their 25th year of incarceration. The statute establishes what is, in the Legislature's view, the appropriate time to determine whether a juvenile offender has 'rehabilitated and gained maturity' [citation] so that he or she may have 'a meaningful opportunity to obtain release' [citation]." (*People v. Franklin, supra*, 63 Cal.4th at p. 278.) The Legislature has since changed the age threshold to age 23 (Stats. 2015, ch. 471, § 2) and now to age 25 (Stats. 2017, ch. 684, § 2.5, eff. Jan. 1, 2018). (See *People v. Contreras* (2018) 4 Cal.5th 349, 381.)

Vailes was 19 years old when he committed the offenses. As a result of his prior strike convictions—robberies committed in 2014 and 2016—he was sentenced under the Three Strikes law to an aggregate indeterminate term of 129 years to life in prison, consisting of the above-summarized indeterminate terms on counts 1, 2, 5 and 6. Under the version of section 3051 applicable when he committed the offenses, Vailes's sentence makes him statutorily ineligible for a youth offender parole hearing. (Former § 3051, subd. (h) ["This section shall not apply to cases in which sentencing occurs pursuant to Section 1170.12, subdivisions (b) to (i), inclusive, of section 667"].)

B. *Contentions*

Characterizing his sentence as essentially LWOP, Vailes contends his

categorical ineligibility for an early youth offender parole hearing violates his rights under the federal and state equal protection clauses. He first suggests that his lengthy sentence puts profound liberty interests at stake, warranting strict scrutiny, which eliminates the presumption of constitutionality and requires the People to establish a compelling state interest to justify the law.[3] However Vailes argues the law fails under any standard, thus he maintains there is no rational basis to exclude him from early parole consideration given he is an offender who never killed or physically harmed any of the victims, or to treat him differently from others in his age group based solely on his commission of prior offenses. He maintains there is no rational explanation to give one who commits murder the benefit of section 3051, but deprive that benefit to a less culpable offender. Vailes also argues exclusion of youthful offenders simply due to their commission of prior offenses "defies logic." He argues: "An offender's criminal history in no way

---

[3]      Vailes's arguments regarding strict scrutiny in part depend on *People v. Olivas* (1976) 17 Cal.3d 236, which he states holds "a compelling state interest must justify distinctions which affect personal liberty." *Olivas* addressed California Youth Authority commitments of juveniles convicted in adult court for periods longer than the maximum prison sentence given to a person over 21 years old for the same offense. (*Olivas*, at p. 239; *People v. K.P.* (2018) 30 Cal.App.5th 331, 342.) In *K.P.*, this court pointed out that the California Supreme Court has explained that *Olivas* "should not be read as requiring strict scrutiny review 'whenever one challenges upon equal protection grounds a penal statute or statutes that authorize different sentences for comparable crimes.' " (*K.P.*, at p. 343.) "Rather, where the issue is not whether a deprivation of an individual's liberty will occur, but rather the duration of that deprivation, rational basis review is appropriate because ' " ' "the power to define crimes and fix penalties is vested exclusively in the legislative branch." ' " ' " (*K.P.*, at p. 343.) In view of *K.P.*, we are unpersuaded that a fundamental interest is at stake here implicating strict scrutiny analysis. Furthermore, Vailes does not argue he is a member of a protected class, and section 3051 does not classify by race, national origin, or any other suspect classification.

8

impacts the inherent disabilities of youth, i.e., impulsivity and the lack of brain maturity, and courts have determined that a sentence that equates to life with no possibility of parole should only extend to those youthful offenders who clearly demonstrate 'irreparable corruption.' " Vailes asks that his sentence be modified to state he must be granted parole eligibility under section 3051, subdivision (b)(3), and he should be entitled to a youthful offender mitigation hearing. (*People v. Franklin*, *supra*, 63 Cal.4th at p. 284.)

The People respond that Vailes forfeited any equal protection claim by failing to raise it below.[4] They argue that Vailes's point about his robberies not resulting in physical harm or death takes issue not with section 3051's exclusion, but with the Three Strikes law, which permits lengthy sentences of the sort he received. The People point out the trial court addressed these concerns by declining Vailes's request to dismiss his prior strike convictions, explaining he had committed numerous other robberies, lured the victims to the scene with deceptive and sophisticated means, used a gun in the present offenses, and sought an extended magazine while in custody. They further point out that *Graham v. Florida* (2010) 560 U.S. 48 and *Miller v. Alabama* (2012) 567 U.S. 460 involved juveniles, whereas Vailes was an adult when he

---

[4] We agree that the forfeiture rule applies to claims based on violations of fundamental constitutional rights (*In re Seaton* (2004) 34 Cal.4th 193, 197-198) and specifically "in the context of sentencing . . . ." (*In re Sheena K.* (2007) 40 Cal.4th 875, 881.) Appellate courts acknowledge forfeiture applies where a defendant fails to contemporaneously object in the lower court that his sentence constitutes cruel and unusual punishment (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247) and also where a defendant fails to assert an equal protection violation. (See, e.g., *People v. Rogers* (2006) 39 Cal.4th 826, 854; *People v. Burgener* (2003) 29 Cal.4th 833, 860, fn. 3; *People v. Hall* (2002) 101 Cal.App.4th 1009, 1024.) We will however address Vailes's constitutional challenges on the merits " 'to show counsel was not constitutionally ineffective by failing to make a futile or meritless objection.' " (*People v. Baker* (2018) 20 Cal.App.5th 711, 720.)

committed his offenses, and the Legislature had a rational basis to treat recidivist young adults differently than non-recidivist young adults.

C. *Standard of Review and Legal Principles*

We review Vailes's equal protection challenge de novo. (*People v. Laird* (2018) 27 Cal.App.5th 458, 469, citing *California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208.) "The California equal protection clause offers substantially similar protection to the federal equal protection clause." (*People v. Laird*, at p. 469.) "The concept of equal treatment under the laws means that persons similarly situated regarding the legitimate purpose of the law should receive like treatment. [Citation.] ' "The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that affects two or more *similarly situated* groups in an unequal manner." [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but "whether they are similarly situated for purposes of the law challenged." ' " (*People v. Morales* (2016) 63 Cal.4th 399, 408.)

Additionally, the Legislature can classify groups as different " 'so long as a reasonable basis for the distinction exists.' " (*People v. Laird*, *supra*, 27 Cal.App.5th at p. 469.) "To mount a successful rational basis challenge, a party must ' "negative every conceivable basis" ' that might support the disputed statutory disparity. [Citations.] If a plausible basis exists for the disparity, '[e]qual protection analysis does not entitle the judiciary to second-guess the wisdom, fairness, or logic of the law.' " (*People v. Edwards* (2019) 34 Cal.App.5th 183, 195-196; see also *People v. Morales*, *supra,* 63 Cal.4th at p. 408; *People v. Turnage* (2012) 55 Cal.4th 62, 74.)

10

D. *Analysis*

Vailes's challenge relies in large part on *People v. Edwards, supra,* 34 Cal.App.5th 183, in which the court held section 3051's categorical ineligibility for offenders sentenced under the "One Strike" law had no rational basis and violated such offenders' right to equal protection. *Edwards* reasoned One Strike offenders are similarly situated to youths who commit intentional first degree murder who remain eligible for youth offender parole hearings even though their crimes are regarded as more egregious than the violent sex crimes falling within the One Strike law. (*Id.* at pp. 195-199.) *Edwards* concluded the carve out in section 3051, subdivision (h) was unconstitutional on its face, and remanded for the trial court to determine whether the defendants there were afforded an adequate opportunity to make a record of information relevant to a future youthful offender parole hearing. (*Id.* at pp. 199-200.) Vailes asks us to disregard *People v. Wilkes* (2020) 46 Cal.App.5th 1159, which rejected an equal protection challenge by a Third Strike offender like Vailes (*People v. Wilkes,* at pp. 1165-1166) as well as this court's opinion in *People v. Williams* (2020) 47 Cal.App.5th 475, 492-493, review granted July 22, 2020, No. S262229), which likewise disagreed with *Edwards.*[5]

---

[5] The California Supreme Court has taken up the equal protection issue raised in *People v. Edwards, supra,* 34 Cal.App.5th 183 as to youths convicted and sentenced for sex crimes under the One Strike law. In *People v. Williams, supra,* 47 Cal.App.5th 475, review granted, a panel of this court, applying a rational basis test, rejected a One Strike defendant's equal protection challenge based on *Edwards.* (*Id.* at pp. 490, 493, rev. gr.) Our colleagues held "the threat of recidivism by violent sexual offenders—as demonstrated by the Legislature's enactment of several comprehensive statutory schemes to curb such recidivism among such offenders—provides a rational basis for the Legislature's decision to exclude one-strikers from the reach of section 3051." (*Williams,* at p. 493, rev. gr.)

11

In *People v. Wilkes*, *supra*, 46 Cal.App.5th 1159, the First District, Division Five Court of Appeal rejected a similar equal protection challenge by a defendant sentenced under the Three Strikes law. There, the jury found the defendant guilty of, among other offenses, attempted murder and found true an allegation it was committed willfully, deliberately and with premeditation. (*Id.* at pp. 1163-1164.) The defendant admitted prior conviction allegations and the court sentenced him under the Three Strikes law to a prison term of 59 years four months to life. (*Id.* at p. 1164.) On appeal, the defendant, who was 25 years old when he committed the offenses, argued the differential treatment of Three Strikes youth offenders violated his right to equal protection; that he was similarly situated to youth offenders who were not sentenced pursuant to the Three Strikes law, and there was no rational basis for the different treatment. (*Id.* at pp. 1164-1165.)

The *Wilkes* court disagreed: "Numerous courts have rejected equal protection challenges to the differential treatment of Three Strikes offenders, concluding that such offenders are not similarly situated to non-recidivist offenders and/or that a rational basis exists to treat them differently. As one such court reasoned: 'A person who has committed and been convicted of two serious or violent felonies before the instant offense is a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system . . . . It is reasonable for the Legislature to distinguish between those felons . . . who come to court with a history of serious or violent felony convictions and those who do not.' [Citations.] [¶] The reasoning of these cases applies here. The purpose of section 3051 is 'to give youthful offenders "a meaningful opportunity to obtain release" after they have served at least 15, 20, or 25 years in prison (§ 3051, subd. (e)) and made " 'a showing of rehabilitation and maturity' " ['] and 'to

account for neuroscience research that the human brain—especially those portions responsible for judgment and decisionmaking—continues to develop into a person's mid-20s.' [Citation.] Assuming a Three Strikes youth offender is similarly situated to other youth offenders for purposes of section 3051, the Legislature could rationally determine that the former—'a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system' [citation]— presents too great a risk of recidivism to allow the possibility of early parole." (*People v. Wilkes*, *supra*, 46 Cal.App.5th at pp. 1165-1166, citing *People v. Cooper* (1996) 43 Cal.App.4th 815, 829; *People v. Kilborn* (1996) 41 Cal.App.4th 1325, 1332 ["The system of imposing greater punishment on *all* persons who commit a felony-grade crime after having committed one or more serious or violent felonies in the past, is rationally related to the legitimate public objective of discouraging recidivism"]; *People v. Spears* (1995) 40 Cal.App.4th 1683, 1687 ["It is clear the Legislature intended to set appellant and other recidivists with prior 'strike' convictions apart from first time offenders and those with less serious criminal histories; it is equally clear it did so with a legitimate objective in mind"]; *People v. McCain* (1995) 36 Cal.App.4th 817, 820 ["The Legislature has seen fit to increase the severity of punishment for recidivists who have committed serious or violent felonies and who again commit felony offenses. . . . [W]e cannot say harsher treatment for such recidivists is irrational or arbitrary such that it denies them equal protection under the law"].)

*Wilkes* pointed out that a distinguishing characteristic of Three Strikes offenders, unlike the defendant sentenced for sex offenses under the One Strike law in *People v. Edwards*, *supra*, 34 Cal.App.5th 183, is that they are not being sentenced for a first-time offense. (*People v. Wilkes*, *supra*, 46

Cal.App.5th at p. 1166 [" 'The "One Strike" law is an alternative, harsher sentencing scheme that applies to specified felony sex offenses,' such that ' "a first-time offense can result in one of two heightened sentences" ' "].) "Thus, the ample authority rejecting equal protection challenges from Three Strikes offenders did not apply in *Edwards*," where the court "took pains to 'note that criminal history plays no role in defining a One Strike crime' and that '[t]he problem in this case is' the categorical exclusion of 'an entire class of youthful offenders convicted of a crime short of homicide . . . , *regardless of criminal history . . . .*' " (*People v. Wilkes*, at pp. 1166-1167, quoting *Edwards*, at p. 199.)

We follow *Wilkes* to reject Vailes's equal protection arguments. We cannot agree that Vailes—who has committed repeat serious felonies (see § 1192.7, subd. (c)(19))—is similarly situated to other youth offenders without strike priors but with sentences over 25 years. Further, we see "a rational relationship between the disparity of treatment and some legitimate governmental purpose." (*Heller v. Doe* (1993) 509 U.S. 312, 320; see also *People v. Turnage, supra,* 55 Cal.4th at p. 74 [equal protection is denied only where there is no rational relationship between the disparity of treatment and some legitimate governmental purpose].) " '[W]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made. [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citation], or 'because it may be "to some extent both underinclusive and overinclusive" ' [citation]." (*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887.) As stated, the law will "survive[] constitutional scrutiny as long as there is ' "any reasonably

14

conceivable state of facts that could provide a rational basis for" ' " treating the youthful offenders differently.  (*People v. Turnage*, at p. 74.)

We hold that in terms of equal protection of the law, the exclusion of Third Strikers from early parole consideration does not run afoul of the holdings in *Graham v. Florida, supra,* 560 U.S. 48, *Miller v. Alabama, supra,* 567 U.S. 460 and *People v. Caballero* (2012) 55 Cal.4th 262, which curtailed imposition of life without parole sentences for juvenile offenders on Eighth Amendment grounds.[6]  The Legislature plainly accounted for these decisions when it enacted section 3051 with its exclusions.  (See *People v. Franklin, supra,* 63 Cal.4th at p. 268 [the Legislature enacted sections 3051 and 4801 "to bring juvenile sentencing in conformity with *Miller*, *Graham*, and *Caballero*"]; see Legis. Counsel's Dig., Sen Bill No. 260, Stats. 2013, ch. 312, § 4 ["This bill would exempt from its provisions inmates who were sentenced pursuant to the Three Strikes law"].)  "At bottom, the Legislature is afforded considerable latitude in defining and setting the consequences of criminal offenses."  (*Johnson v. Department of Justice, supra,* 60 Cal.4th at p. 887.) We agree the Legislature's treatment of youths sentenced under the Three Strikes law like Vailes so as to exclude them from the benefit of early parole consideration is rationally related to the legitimate governmental objective of discouraging recidivism.  (*People v. Kilborn, supra,* 41 Cal.App.4th at p. 1332.)  We cannot say in view of these legislative concerns that the different

---

6    Under *Graham v. Florida, supra* 560 U.S. 48, the Eighth Amendment forbids a juvenile who commits an offense other than a homicide from being sentenced to LWOP.  (*Id.* at p. 74; *In re Bolton* (2019) 40 Cal.App.5th 611, 617.)  *Miller v. Alabama, supra,* 567 U.S. 460 forbids the automatic imposition of LWOP on juveniles in homicide cases.  (*Id.* at p. 465; *In re Bolton*, at p. 617.)

treatment here so lacks rationality that it constitutes a denial of equal protection.  (*Ibid*.)

## II.  *Claim of Cruel and Unusual Punishment*

Vailes contends his sentence constitutes cruel and unusual punishment when viewed in the context of his personal characteristics and severity of his criminal conduct.  He maintains his trial counsel should have asserted such a claim in addition to moving to strike his prior convictions on *Romero* grounds, and the matter should be remanded so the court can refashion his sentence to allow him to persuade the Board of Parole hearings he should have an opportunity for release during his lifetime.

## A.  *Forfeiture*

The People argue Vailes forfeited any cruel and unusual punishment challenge by not objecting to his sentence on that ground below.  We agree, particularly because Vailes points to his personal characteristics to support his claim. (Accord, *People v. Russell* (2010) 187 Cal.App.4th 981, 993 [claim forfeited; cruel and unusual punishment claim "should have been raised in the trial court where the trial judge, having heard all of the evidence, would be in a position to assess the validity of [defendant's] claims for [mental] impairment and make assessments as to their impact, if any, on the constitutionality of the sentence in this case"].)

Acknowledging this, Vailes nevertheless argues we should address the merits of his claim because his counsel's failure to make this argument was constitutionally deficient representation.  We will do so to forestall such a claim.  As discussed below, Vailes's sentence did not constitute cruel and/or unusual punishment under either the United States Constitution or California Constitution, thus, we reject his challenge on its merits, which resolves his alternative argument that he was denied effective assistance of

counsel. Vailes cannot carry his burden to show as a demonstrable reality that he was prejudiced by his counsel's purported deficient performance (i.e., he has not shown it is reasonably probable he would have obtained a more favorable sentence had his counsel timely objected on that ground). (*Strickland v. Washington* (1984) 466 U.S. 668, 693-694; *People v. Henderson* (2020) 46 Cal.App.5th 533, 550-551.)

B. *Analysis Under the Federal Constitution*

The Eighth Amendment to the federal Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." (U.S. Const., 8th Amend.) It is firmly established that " '[t]he concept of proportionality is central to the Eighth Amendment . . . .' " (*In re Coley* (2012) 55 Cal.4th 524, 538.) The United States Supreme Court holds that the Eighth Amendment " 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are "grossly disproportionate" to the crime.' " (*Graham v. Florida*, *supra*, 560 U.S. at pp. 59-60.) To decide whether a sentence is grossly disproportionate to a crime, a court "begin[s] by comparing the gravity of the offense and the severity of the sentence. [Citation.] '[I]n the rare case in which [this] threshold comparison . . . leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. [Citation.] If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." (*Id.* at p. 60.)

In determining the gravity of a defendant's conduct in the face of an Eighth Amendment challenge to a sentence imposed under a recidivist

17

sentencing statute, we consider not only the triggering offense but also the nature and extent of the defendant's criminal history. (*In re Coley*, 55 Cal.4th at p. 562; accord, *People v. Mantanez* (2002) 98 Cal.App.4th 354, 366.) In a noncapital context as here, successful Eighth Amendment challenges are " 'exceedingly rare.' " (*Ewing v. California* (2003) 538 U.S. 11, 21.) In *Coley*, the California Supreme Court affirmed the 25-year-to-life sentence of a person who had suffered many prior serious or violent felony convictions, but was then being prosecuted for failing to update his sex offender registration within the time period required by the relevant statute. The court concluded there was no Eighth Amendment violation in the Three Strikes sentence imposed on the petitioner: "In light of the particularly heinous nature of petitioner's prior criminal activity . . . , petitioners present offense—reflecting a deliberate decision by petitioner to refuse to comply with an important legal obligation—may properly be viewed as an indicator of potentially significant future dangerousness. Taking into account both the circumstances of petitioner's triggering offense and petitioner's very serious criminal history, we conclude that the 25-year-to-life sentence imposed upon petitioner does not constitute cruel and unusual punishment in violation of the Eighth Amendment." (*Coley*, at p. 562; see also *id*. at p. 531; *Mantanez*, at pp. 358-367.)

Here, Vailes suffered three prior robbery convictions under the Three Strikes law (§ 667, subd. (b)-(i)), and while on bail committed three more robberies with multiple victims, armed with a firearm. Robbery is both a serious (§ 1192.7, subds. (c)(19), (d)) and violent (§ 667.5, subd. (c)(9)) felony. His criminal history and record show numerous prior robberies starting as a juvenile; after being charged with 12 counts of robbery, theft and receiving stolen property, the juvenile court found true Vailes had committed a robbery

in September 2014, his first strike prior conviction. Vailes had snatched a cell phone from the victim. In November 2016, Vailes's juvenile probation was terminated after he was charged with multiple crimes (conspiracy, two robberies, grand theft, burglary, unlawful possession of a firearm without a serial number and receiving stolen property) committed in May and June 2015. The following month Vailes pleaded guilty to two counts of robbery for which he received a stipulated six-year prison term. As an adult, he committed the present violent robberies while on bail for the prior offenses.

Vailes's past conduct, which includes repeated, forcible robberies with escalating violence, was precisely the reason for his long sentence. As this court has recognized: " 'The basic fallacy of appellant's argument lies in his failure to acknowledge that he "is not subject to a life sentence merely on the basis of his current offense[s] but on the basis of his recidivist behavior. Recidivism in the commission of multiple felonies poses a manifest danger to society[,] justifying the imposition of longer sentences for subsequent offenses." ' " (*People v. Mantanez*, *supra*, 98 Cal.App.4th at p. 366.) Taking into account the circumstances of the present offenses and Vailes's serious criminal history, we conclude the 129-year-to-life sentence does not constitute cruel and unusual punishment in violation of the Eighth Amendment.

C. *Analysis Under the California Constitution*

"The California Constitution similarly prohibits cruel or unusual punishment. (Cal. Const., art. 1, sec. 17.) A punishment is cruel or unusual only if it 'is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' (*In re Lynch* (1972) 8 Cal.3d 410, 424, . . . .) More specifically, imposition of a life term for even a nonviolent felony committed by a defendant with a history of serious or violent felony convictions does not violate the California

19

Constitution." (*People v. Bernal* (2019) 42 Cal.App.5th 1160, 1173, citing *People v. Mantanez, supra*, 98 Cal.App.4th at pp. 363-364; see also *People v. Edwards, supra*, 34 Cal.App.5th at p. 191.)

A claim under the state Constitution requires that we " 'examine the circumstances of the offense' and the defendant in determining whether 'the penalty imposed is "grossly disproportionate to the defendant's culpability." ' " (*People v. Edwards, supra*, 34 Cal.App.5th at p. 191.) Courts generally (1) examine the nature of the offense and offender, (2) compare the punishment with the penalty for more serious crimes in the same jurisdiction, and (3) measure the punishment to the penalty for the same offense in different jurisdictions. (*In re Lynch, supra*, 8 Cal.3d at pp. 425-427; *People v. Cuevas* (2001) 89 Cal.App.4th 689, 702.) Vailes, however, appears to concede that the comparative punishment analysis is not required; and he is correct that this portion of the analysis is tempered when a defendant is sentenced under the Three Strikes law. (*People v. Cline* (1998) 60 Cal.App.4th 1327, 1338.) This is so because "it is a defendant's 'recidivism in combination with his current crimes that places him under the [T]hree [S]trikes law. Because the Legislature may constitutionally enact statutes imposing more severe punishment for habitual criminals, it is illogical to compare [defendant's] punishment for his "offense," which includes his recidivist behavior, to the punishment of others who have committed more serious crimes, but have not qualified as repeat felons.' " (*Ibid*.) Vailes does not undertake such an analysis on appeal, so we focus on the first prong regarding the nature of the offense and the offender. (Accord, *Cuevas, supra*, 89 Cal.App.4th at p. 702; *People v. Ayon* (1996) 46 Cal.App.4th 385, 399 [determinations whether a punishment is cruel or unusual may be made on

20

first prong alone], disapproved on another point in *People v. Deloza* (1998) 18 Cal.4th 585, 593, 600, fn. 10.)

Doing so, we evaluate the totality of the circumstances surrounding Vailes's current offense, along with his personal characteristics, including his age and prior criminality. (*People v. Lucero* (2000) 23 Cal.4th 692, 739; *People v. Cuevas*, *supra*, 89 Cal.App.4th at p. 702.) As Vailes acknowledges, he was not a juvenile but a 19-year-old adult when he committed the present offenses. But he points to mitigating circumstances. Vailes reported to probation officer that his father was imprisoned, and his counsel in a statement in mitigation stated Vailes experienced abuse and domestic violence at his home. Pointing to representations in his counsel's sentencing brief, Vailes argues he suffers from anxiety and depression as well as "deficient intellectual functioning" or low IQ, as confirmed in cognitive testing. He argues he was abusing drugs when his legal troubles emerged. The record indicates Vailes tested positive for drugs in June 2015 and July 2016.

All of this is countered by the fact Vailes is a repeat offender of serious crimes; he committed the present serious and violent robberies while armed with a firearm, and after much planning and sophistication to lure the victims to locations where they would be vulnerable. Like in *People v. Cuevas*, *supra*, 89 Cal.App.4th 689, we decline to view Vailes's offenses as nonviolent and not harmful. (*Id.* at p. 704.) And like in *Cuevas*, Vailes must be held responsible for his repeat criminal behavior even in view of his family difficulties. (*Id.* at pp. 704-705 [85-year-to-life sentence for three nonviolent bank robberies not cruel and unusual even where defendant had a difficult family history and long term drug addiction; such addiction is not necessarily mitigating when a defendant with a long-term problem seems unwilling to

pursue treatment and despite a difficult upbringing, a defendant is "responsible under the law for his behavior, which he has not seen fit to amend"].) Extended prison terms may be imposed under the Three Strikes law without violating the proscription against cruel and unusual punishment because such defendants are being punished for recidivism in addition to their current offenses. (See *Ewing v. California, supra*, 538 U.S. at pp. 29-30 [upholding under Eighth Amendment proportionality review 25-year-to-life sentence under Three Strikes law when current offense was theft of golf clubs while on parole for serious felonies]; *People v. Cuevas, supra*, 89 Cal.App.4th at pp. 702-705; *People v. Byrd* (2001) 89 Cal.App.4th 1373, 1382-1384 [115 years plus 444 years to life for 15 felony counts, including robberies, mayhem and attempted murder, plus firearm enhancements does not violate article I, section 17 of the California Constitution]; *People v. Ayon, supra*, 46 Cal.App.4th at pp. 396-401 [240 years to life for seven counts of robbery and two counts of attempted robbery with firearm allegations]; *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1130, 1134-1136 ["California statutes imposing more severe punishment on habitual criminals have long withstood constitutional challenge"; sentence of 375 years to life plus 53 years for 19 felonies, including assaults and sexual offenses was not cruel and unusual under California Constitution].)

We conclude that under these circumstances, Vailes's lengthy prison term is not disproportionate to his serious and violent crimes and does not run afoul of the California Constitution. Our conclusion necessarily disposes of Vailes's ineffective assistance of counsel claim.

## IV. *Modification of Abstract of Judgment*

At Vailes's sentencing hearing, the trial court ordered that Vailes's 6-year determinate sentence on count 7 be stayed under section 654. The abstract of judgment, however, does not reflect the stay. Because the court's oral pronouncement controls (see *People v. Mitchell* (2001) 26 Cal.4th 181, 185), we order the abstract of judgment be modified to reflect the section 654 stay on count 7.

## DISPOSITION

The trial court is directed to amend the abstract of judgment to reflect that Vailes's sentence on count 7 is stayed under section 654, and forward a certified copy of the amended abstract of judgment to the Department of Correction and Rehabilitation. In all other respects the judgment is affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


AARON, J.


DATO, J.

23